E. P. RAYMOND, Appellee, v. O. M. HATCHER, MAUD L. HATCHER, J. S. HATCHER and MAUD E. HATCHER, Appellants.

**Real property:** CONTRACT OF EXCHANGE: EVIDENCE: FRAUD. In this action to reform and set aside a contract for the exchange of real property, on the ground of fraud and deceit, the evidence is reviewed and held to show fraud.

*Appeal from Monona District Court.*—HON. F. R. GAYNOR, Judge.

TUESDAY, FEBRUARY 10, 1914.

SUIT in equity to reform a contract involving an exchange of real estate and to set aside such contract on the ground of fraud and deceit. There was a decree for the plaintiff, setting aside the contract. The defendants appeal.—*Affirmed.*

*J. W. Anderson* and *H. A. Bronson,* for appellants.

*Henderson & Fribourg,* for appellee.

EVANS, J.—The plaintiff was the owner of a farm of 360 acres in Monona county, Iowa. On January 7, 1911, he entered into a contract with the defendant O. M. Hatcher to exchange such farm for a certain hotel property located in Stockton, Ill., and for certain residence property located in Grand Forks, N. D. Shortly prior to such date, one Purvis, a real estate agent of Minneapolis, had become the agent of the plaintiff for the sale or exchange of his Monona county farm; and the contract referred to was brought about through his

agency. When he became agent for the plaintiff, he was already the agent of the defendant O. M. Hatcher for the sale or exchange of the properties included in the contract, or some of them. Purvis and Hatcher had been intimately associated in their dealings for some time prior to the time of such agency. Purvis had an office at Minneapolis, and operated under the name of the "Great Northern Land Company." A part of the offices of the Great Northern Land Company was used by Hatcher as an office at Minneapolis, although his headquarters appear to have been at Grand Forks. The Stockton hotel property had recently been acquired by Hatcher from Purvis. Purvis was the owner of one-half interest in a $2,000 mortgage on such property, and was to that extent personally interested in the contract of exchange, such mortgage being assumed in the contract by Raymond. None of these facts were known to Raymond at the time he entered into the contract. In the drawing of the contract and in the subsequent negotiations looking to the performance thereof, Purvis acted uniformly against the interest of his principal and in favor of Hatcher. He drew the contract that was signed, and omitted matters therefrom which had been agreed upon, and which were favorable to his principal. It was agreed between the parties to the contract that both would execute conveyances and would place the same with abstracts of title in escrow with the Great Northern Land Company, which was only another name for Purvis. On or about January 21st the papers were so put in escrow by both parties. Plaintiff's deed and abstract were in substantial accord with the requirements of the contract. The deeds and abstracts of defendant Hatcher were not in accord with such requirements. Defects in the titles and in the form of conveyance were pointed out by plaintiff's attorney. Many weeks were consumed in an effort to cure some of these defects; other defects being ignored. Shortly after January 21st and before January 27th Hatcher obtained from Purvis a pretended complete delivery of Raymond's deed, and filed the same for record

on January 27th. This fact was not known to Raymond until about March 1st. Up to this time the contract was yet unperformed by Hatcher in substantial requirements. In the meantime, and on February 15th, Hatcher conveyed Raymond's land to his brother, J. S. Hatcher, and such conveyance was put of record. The evidence leaves little room for doubt but that Hatcher and Purvis worked at all times in collusion against Raymond, and that this collusion lasted throughout the negotiations following the deposit in escrow, and which lasted until after March 4, 1911. The following letter from Hatcher to Purvis is illustrative: ''Grand Forks, N. D. March 4, 1911. Great Northern Land Co., Palace Building, Minneapolis, Minn.—Gentlemen: When you get through with Raymond in connection with getting the matter with Bingham straightened up which we sent you, you can give him the inclosed letter from Eaton and also the other papers the writer left with you for Raymond, which completes everything coming to him excepting the Westacott mortgage extension which you can attend to. Get from him at the same time the Iowa farm lease properly assigned to the writer. Better not say anything to him about this matter until the Bingham matter is fixed as he may be somewhat peeved for a few days after getting the statement I left for him with you. Yours truly, O. M. Hatcher, President.'' The title to the hotel property was materially defective. The Grand Forks properties were subject to special assessments which were unknown to the plaintiff at the time the contract was entered into. Hatcher and Purvis had represented to the plaintiff that the properties were rented, and had stated the amounts of such rentals. The fact was that the Stockton Hotel was occupied and operated by a tenant, rent free, and several of the Grand Forks properties were not rented at all. This latter fact was covered in part from the view of the plaintiff by an agreement of the Hatcher Brothers Corporation to rent all the Grand Forks properties from the plaintiff for nine months for $146 per month. We think the evidence

is convincing that the agency of Purvis was a fraud upon the plaintiff, as Hatcher well knew, and that it was assumed for the benefit of Hatcher. Their representations as to the renting of the property and as to the nature of the incumbrances were false and fraudulent. The obtaining of plaintiff's deed to the Monona county farm and placing the same of record and the conveying of the property to J. S. Hatcher was clearly fraudulent. Nothing is claimed for J. S. Hatcher in the argument before us. It is expressly conceded that he stands in no better position than O. M. Hatcher, and that his rights are measured by those of his grantor. But in the court below both defendants pleaded and testified that he was a *bona fide* purchaser without notice. Their testimony in support of such plea was inconsistent, contradictory, and manifestly untrue. The plaintiff had little need of the present concession. Both of them testified that the consideration for the conveyance of the Monona county land was that J. S. Hatcher conveyed to O. M. Hatcher certain property known as the Bingham land in Minnesota. The conveyance of the Bingham land was made by J. S. to O. M. Hatcher in June, 1911, after the commencement of this suit. The property was acquired by them shortly before, for a consideration not greater than $500; whereas the undisputed evidence shows the value of the Monona county farm to be $36,000, with an incumbrance of $7,000 thereon, leaving a net value of $29,000. The Stockton Hotel property was in the name of J. S. Hatcher. At one stage in the trial, the defendant O. M. Hatcher testified that his brother J. S. Hatcher owned the same. At another stage he testified that it belonged to the Hatcher Brothers Corporation, of which O. M. Hatcher was president and J. S. Hatcher was treasurer. J. S. Hatcher testified that the Stockton property belonged to his brother O. M., and that he himself had no interest in it, although it was in his name. And again he testified that it belonged to the corporation. These circumstances indicate the moral tendencies of the defendants. They are confirmed by others, which we will not

take time to set forth. The record satisfies us that the plaintiff was grossly defrauded. We are therefore in accord with the decree of the trial court and it is *Affirmed.*

LADD, C. J., and WEAVER and PRESTON, JJ., concur.